T.C. Memo. 2012-114

UNITED STATES TAX COURT

BETTY A. ONG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16498-10, 18746-10,          Filed April 19, 2012.
                    19907-10, 28138-10.

Betty A. Ong, pro se.

<u>Rebecca S. Duewer-Grenville</u> and <u>Lori Katrine H. Shelton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  These consolidated cases arise from petitions for redetermination filed in response to notices of deficiency issued to petitioner for

2006-09 (years at issue).  Respondent determined the following deficiencies in petitioner's Federal income tax and penalties pursuant to section 6662(a):[1]

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 2006 | $24,553 | $4,911 |
| 2007 | 11,454 | 2,290 |
| 2008 | 6,321 | 1,264 |
| 2009 | 11,160 | 2,232 |

After stipulations and concessions[2] the issues remaining for decision are:  (1) whether petitioner is entitled to certain expense deductions related to her real estate and home care businesses claimed on Schedule C, Profit or Loss From Business, for each of the years at issue; (2) whether petitioner is entitled to a deduction for self-employed long-term health care insurance expense for 2009; and (3) whether petitioner is liable for penalties pursuant to section 6662(a) for the years at issue.

_____

[1]All section references are to the Internal Revenue Code as in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  Amounts are rounded to the nearest dollar.

[2]Respondent has conceded petitioner's gambling income and losses.  Further, respondent has conceded many of petitioner's claimed deductions, as shown in the tables below.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the second supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. At the time petitioner filed her petition, she lived in California.

During the years at issue petitioner lived in a house on Gardiner Avenue in San Francisco, California (Gardiner house). Petitioner's son, Filemon Ong (Filemon), lived in a house on Lassik Street in Sacramento, California (Lassik house). The Lassik house has three bedrooms and is in a residential neighborhood.

Petitioner worked as a real estate broker in northern California for over 20 years under the name Betty Ong Real Estate. Betty Ong Real Estate operated out of the Gardiner house, where she held client meetings and performed administrative work. However, petitioner executed the closing of any real estate sale at the offices of a title company. Beginning in 2008 petitioner also used parts of the Lassik house for Betty Ong Real Estate. Petitioner did not use the entire Gardiner house or the entire Lassik house for Betty Ong Real Estate.

During the years at issue petitioner also operated a home health care business (BAO Home Care). Petitioner has been a licensed nurse for almost 40 years.

Petitioner also used the Gardiner house to operate BAO Home Care. Further, on December 7, 2009, Betty Ong Real Estate and BAO Home Care entered into a lease agreement with Filemon for use of the Lassik house from August 1 to December 31, 2009. The lease provides for a "discounted" rent of $4,000. Petitioner did not use the entire Gardiner house or the entire Lassik house for BAO home care. Petitioner also met with BAO Home Care patients in their homes and in the hospital.

In 2006 and 2007 petitioner received wage income from and was a shareholder of U.S. Pacific Loans, Inc. (US Pacific). Petitioner worked for US Pacific out of the Gardiner house but did not use the entire house for her work.

On March 29, 2005, petitioner entered into an open-ended Broker-Agent Independent Contractor Agreement (broker-agent agreement) with Monique Garcia. The broker-agent agreement provides that Garcia must maintain a real estate license in California and provide brokerage services exclusively on behalf of petitioner. The broker-agent agreement further provides for payments to Garcia of 70% of broker's fees for her participation in a listing. Petitioner's books and records include two checks made payable to Garcia, one for $4,960 and the other for $18,930, a copy of a Form 1099-MISC, Miscellaneous Income, issued to Garcia for 2006 from Betty Ong Real Estate for $23,890, as well as Garcia's driver's license,

Social Security card, and birth certificate. Petitioner's books and records also include Forms 1099-MISC for Fe G. De Asis for 2006 issued from Betty Ong Real Estate and for Marta Ceron and Analee M. Marasigan for 2006 from BAO Home Care.

For each year at issue petitioner claimed deductions on Schedule C of her Form 1040, U.S. Individual Income Tax Return, in connection with Betty Ong Real Estate and BAO home care. Petitioner's books and records with respect to Betty Ong Real Estate and BAO Home care consist of an assortment of poorly organized handwritten notes, bills, checks, credit card statements, receipts, and her calendar. Petitioner did not keep a contemporaneous log of business expenses incurred with respect to any vehicles, cellular telephones, computer equipment, travel, and meals and entertainment.

Petitioner's books and records include many personal expenses and many other expenses with little, if any, explanation of a business purpose. For example, many of petitioner's credit card bills include notations identifying an expense as "supplies" or "business promotions" without further explanation. Many of the checks petitioner has provided have no explanation in the memo line. In others, the memo line provides vague references to dates and addresses.

Petitioner prepared her own Federal tax returns for 2006-08. Petitioner was a member of the California Tax Education Council (CTEC) throughout the years at issue and worked for H&R Block as a tax return preparer sometime between 2003 and 2005. For 2009 HRB Tax Group, Inc. (HRB), prepared petitioner's Federal tax return.

On May 7, 2010, respondent sent petitioner notices of deficiency for 2006 and 2007, disallowing many of her claimed deductions. On August 11 and December 3, 2010, respondent sent petitioner a notice of deficiency for 2008 and 2009, again disallowing many of petitioner's claimed deductions. Respondent has since conceded some of petitioner's deductions. The following tables summarize petitioner's claimed expense deductions for Betty Ong Real Estate and BAO Home Care for the years at issue, the amounts disallowed, and respondent's concessions.[3]

---

[3]In addition to conceding some of her claimed deductions, respondent has conceded that petitioner is entitled to additional deductions for expenses that she did not claim on her Federal tax returns for the years at issue.

## Betty Ong Real Estate

| Year | Expense | Claimed deduction | Amount disallowed | Amount conceded |
|------|---------|-------------------|-------------------|-----------------|
| 2006 | Contract labor | $26,140 | $26,140 | -- |
|      | Business promotions | 36,284 | 36,284 | -- |
| 2007 | Commissions and fees | 15,360 | 15,000 | -- |
|      | Contract labor | 6,450 | 6,450 | -- |
|      | Taxes and licenses | 3,794 | 3,394 | $165 |
|      | Other expenses | 12,712 | 6,580 | -- |
|      | Advertising | -- | -- | 547 |
|      | Tax preparation | -- | -- | 36 |
| 2008 | Returns and allowances | 1,300 | 1,300 | -- |
|      | Advertising | 747 | 119 | 466 |
|      | Legal and professional | 1,555 | 1,355 | -- |
|      | Supplies | 1,511 | 1,511 | -- |
|      | Travel | 222 | 222 | 137 |
|      | Cell phone | 602 | 422 | -- |
|      | Business phones | 2,087 | 835 | -- |
|      | Web site | 529 | 132 | 65 |
|      | Licenses | -- | -- | 737 |
|      | Tax preparation | -- | -- | 147 |
|      | Software/computers | -- | -- | 506 |
|      | Miscellaneous | -- | -- | 479 |
| 2009 | Commissions and fees | 3,000 | 3,000 | -- |
|      | Contract labor | 2,740 | 756 | -- |
|      | Employee benefit program | 3,660 | 3,660 | -- |
|      | Insurance (nonhealth) | 1,469 | 1,469 | -- |
|      | Mortgage | 27,316 | 27,316 | -- |
|      | Legal and professional | 1,349 | 1,349 | -- |
|      | Rent or lease--other property | 4,000 | 4,000 | -- |
|      | Repairs and maintenance | 939 | 939 | -- |
|      | Travel | 2,798 | 2,798 | -- |
|      | Meals and entertainment | 1,000 | 1,000 | -- |
|      | Utilities | 1,575 | 1,575 | -- |
|      | Alarm | 308 | 308 | -- |
|      | Advertising | -- | -- | 578 |
|      | Tax preparation | -- | -- | 50 |
|      | Software/computers | -- | -- | 50 |
|      | Miscellaneous | -- | -- | 710 |

BAO Home Care

| Year | Expense | Claimed deduction | Amount disallowed | Amount conceded |
|---|---|---|---|---|
| 2006 | Contract labor | $1,150 | $1,150 | -- |
| | Miscellaneous | 2,209 | 2,209 | -- |
| | Business promotions | 2,082 | 2,082 | -- |
| 2007 | Rent or lease--vehicles, machinery and equipment | 18,228 | 18,228 | -- |
| | Other expenses | 6,765 | 2,616 | -- |
| 2008 | Commissions and fees | 168 | 168 | -- |
| | Contract labor | 4,785 | 4,785 | $4,553 |
| | Insurance (nonhealth) | 1,610 | 1,610 | 42 |
| | Legal and professional | 5,225 | 5,225 | -- |
| | Rent or lease--vehicles, machinery and equipment | 18,228 | 18,228 | -- |
| | Supplies | 1,164 | 1,164 | -- |
| | Meals and entertainment | 1,217 | 1,217 | -- |
| | Education | 167 | 60 | 49 |
| | Dues and membership fees | 474 | 150 | -- |
| | Gasoline and car maintenance | 1,911 | 1,583 | -- |
| | Software/computers | 482 | 482 | -- |
| | Other expenses | 2,729 | 2,522 | -- |
| | Bookkeeping | -- | -- | 204 |
| | Tax preparation | -- | -- | 108 |
| 2009 | Contract labor | 964 | 964 | 15,539 |
| | Insurance (nonhealth) | 1,610 | 1,610 | -- |
| | Rent or lease--other property | 426 | 43 | -- |
| | Repairs and maintenance | 2,329 | 2,329 | -- |
| | Supplies | 2,959 | 2,150 | -- |
| | Travel | 1,221 | 1,221 | -- |
| | Meals and entertainment | 353 | 353 | -- |
| | Utilities | 1,679 | 1,679 | -- |
| | Alarm | 180 | 180 | -- |

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that those determinations are incorrect.  Rule 142(a)(1).  Petitioner does not argue that the burden of proof shifts to respondent pursuant to section 7491(a), nor has she shown that the threshold requirements of section 7491(a) have been met for any of the determinations at issue.  Accordingly, the burden of proving that respondent's determinations are erroneous remains on petitioner.

II.    Schedule C Deductions

A.    General Rules

Deductions are a matter of legislative grace, and taxpayers must prove they are entitled to the deductions claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 162(a) provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[4]  Taxpayers are required to maintain records sufficient to establish the amounts of allowable

---

[4]Respondent does not argue that Betty Ong Real Estate or BAO home care is not a "trade or business" pursuant to sec. 162(a).

deductions and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999). Section 262(a) precludes any deduction "for personal, living, or family expenses".

If a factual basis exists to do so, the Court may in some circumstances estimate an allowable expense, bearing heavily against the taxpayer who failed to maintain adequate records. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957).

B.    Section 274 Expenses

Section 274(d) applies a more strict substantiation requirement for certain business expenses including, among other things, expenses for travel, meals and entertainment, gifts, and listed property (e.g., automobile expenses, cellular telephones, computer equipment, or any property of a type generally used for purposes of entertainment, recreation, or amusement). See secs. 274(d), 280F(d)(4)(A). To substantiate a deduction attributable to such expenses, a

taxpayer must maintain adequate records or present corroborative evidence to show the following: (1) the amount of the expense; (2) the amount of each business use and total use (e.g., mileage for automobiles and time for other listed property); (3) the time (i.e., date of the expenditure or use); and (4) the business purpose of the expense or use. Sec. 274(d); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). In the absence of evidence establishing the elements of the expenditure or use, deductions are to be disallowed entirely. Sec. 274(d); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); see also sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

To satisfy the adequate records requirement of section 274(d), the taxpayer must maintain an account book, a diary, a log, a statement of expense, trip sheets, or similar record and documentary evidence that in combination are sufficient to establish each element of the expenditure or use. See sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). If a taxpayer does not have adequate records to substantiate each element of an expense, he may alternatively establish an element by "his own statement, whether written or

oral, containing specific information in detail as to such element", and by "other corroborative evidence sufficient to establish such element". Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

The Cohan rule does not permit the Court to estimate expenses with respect to items enumerated in section 274(d). Sanford v. Commissioner, 50 T.C. at 827; Rodriguez v. Commissioner, T.C. Memo. 2009-22 (the strict substantiation requirements of section 274(d) preclude the Court and taxpayers from approximating certain expenses).

Petitioner claimed the following deductions that are subject to the strict substantiation requirements of section 274(d): (1) travel expenses; (2) meals and entertainment expenses; (3) automobile expenses including insurance, gasoline, repairs and maintenance; (4) software expenses; and (5) cell phone expenses. Petitioner's books and records prove that many of these expenses were incurred and paid. However, petitioner has failed to present adequate records or present corroborative evidence to show a business purpose for these expenses. The only evidence petitioner has presented to support the business purpose of these claimed deductions is her own broad self-serving testimony and uncorroborated notes. We are under no obligation to accept uncorroborated and self-serving testimony. See

Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has not presented the detailed information needed to meet the strict substantiation requirements of section 274(d). We therefore sustain respondent's determinations with respect to all expenses subject to those requirements.

C.      Business Use of Home

Petitioner claimed expense deductions for rent, utilities, repairs, alarm systems, cleaning, gardening, and water associated with the Gardiner house and the Lassik house. In addition to the requirements discussed above, section 280A(a) provides the general rule that deductions with respect to a dwelling unit which is used as the taxpayer's residence are not allowable unless an exception applies.[5] The exceptions are found in section 280A(c), which provides in relevant part:[6]

---

[5]For a dwelling unit to qualify as a residence the taxpayer must use it for the greater of 14 days or 10% of the number of days during the taxable year for which the unit is rented at a fair rental price. See sec. 280A(d)(1).

[6]Sec. 280A(c)(4) generally provides a specific exception to sec. 280A(a) for items allocable to the use of any portion of a dwelling unit on a regular basis in a taxpayer's trade or business of providing "day care" services for children, individuals who have attained the age of 65, and individuals who are physically or mentally incapable of taking care of themselves. This exception requires the owner or operator of the trade or business to have applied for, been granted, or be exempt from having the proper license, certification, registration, or approval as a "day care" under State law. Sec. 280A(c)(4)(B). Petitioner has not presented any

(continued...)

- 14 -

SEC. 280A(c).  Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--

(1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--

(A) as the principal place of business for any trade or business of the taxpayer,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * *

Because there are substantial business and personal motives for the expenses related to petitioner's residence, we must determine what portion of the residence was used regularly and exclusively for her businesses.  See Int'l Trading Co. v. Commissioner, 275 F.2d 578, 584-587 (7th Cir. 1960), aff'g T.C. Memo. 1958-104; Deihl v. Commissioner, T.C. Memo. 2005-287.  Combined personal and business use of a section of the residence  precludes deductibility.  See generally Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987).

---

[6](...continued)
evidence about the age and condition of BAO Home Care's clients.  Further, petitioner has not presented any evidence of a license, registration, or approval under California law.  Therefore, sec. 280A(c)(4) is not applicable to petitioner because BAO Home Care was not a "day care" service during the years at issue.

### 1. Gardiner House

The Gardiner house was petitioner's residence during the years at issue. As a result, expenses with respect to the Gardiner house are not deductible unless an exception pursuant to section 280A(c) applies. Petitioner used the Gardiner house for business purposes in connection with Betty Ong Real Estate, BAO Home Care, and US Pacific during the years at issue. Petitioner argues that the Gardiner house was used to meet with clients and perform administrative work for Betty Ong Real Estate. However, petitioner has not established the existence of an office or other similar part of the Gardiner house that was exclusively used for this purpose. For BAO Home Care and US Pacific, petitioner has failed to present any evidence of how and to what extent she used the Gardiner house. Thus, we have no reasonable basis upon which we may apply the Cohan rule to estimate the deductible portions of petitioner's expenses in connection with the Gardiner house. We therefore sustain respondent's determination with respect to all expenses in connection with the Gardiner house.

### 2. Lassik House

If a member of the taxpayer's family uses the dwelling unit as a principal residence, a personal purpose is attributed to the taxpayer. Secs. 280A(d)(2)(A), 267(c)(4). Beginning in 2008 petitioner began using the Lassik house for Betty

Ong Real Estate. The Lassik house was Filemon's principal residence and, therefore, section 280A(d)(2)(A) attributes a personal purpose to petitioner's use of the Lassik house. Petitioner has not established that any part of the Lassik house was used exclusively for any of her businesses. Accordingly, because petitioner used the Lassik house for "personal purposes" pursuant to section 280A(d)(2)(A) and because petitioner failed to establish that any part of the Lassik house was used exclusively for business, we sustain respondent's determination with respect to all expenses in connection with the Lassik house.

D. Life Insurance

A taxpayer is not entitled to a deduction for premiums paid on any life insurance policy if the taxpayer directly or indirectly is a beneficiary under the policy. See sec. 264(a)(1). Petitioner made payments to Reassure America Life Insurance Co. on behalf of BAO Home Care of $1,610 in 2008 and 2009. Petitioner failed to provide a copy of the insurance policy related to these payments or any other information listing the beneficiaries of the policy. She has therefore failed to meet her burden of proof. Accordingly, we sustain respondent's determinations

with respect to petitioner's deductions for nonhealth insurance of $1,610 for 2008 and 2009.[7]

E.    Contract Labor, Commissions and Fees, and Returns and Allowances

Petitioner relies on numerous checks in the record to various individuals to substantiate expense deductions for contract labor, commissions and fees, and returns and allowances.  Further, petitioner has provided Forms 1099-MISC issued to Garcia and Asis for 2006 from Betty Ong Real Estate and to Ceron and Marasigan for 2006 from BAO Home Care.

With respect to Garcia, in addition to the Form 1099-MISC for 2006, the broker-agent agreement indicates that as of March 29, 2005, Garcia provided brokerage services on behalf of petitioner.  The broker-agent agreement required Garcia to maintain a real estate license in California, work exclusively for petitioner, and entitled her to 70% of broker's fees for her participation in a listing. Petitioner's books and records include a copy of Garcia's driver's license, Social Security card, and birth certificate.  Petitioner has established the existence of a working relationship between herself and Garcia.  Additionally, petitioner has

_____

[7]Sec. 264(b) provides that sec. 264(a)(1) shall not apply to any annuity contract described in sec. 72(s)(5) and any annuity contract to which sec. 72(u) applies.  Petitioner has not presented any evidence of an annuity contract that would qualify as an exception to sec. 264(a)(1).

presented two checks made payable to Garcia in 2006 as proof of payment, one for $4,960 and the other for $18,930. Therefore, petitioner is entitled to a deduction of $23,890 for contract labor paid to Garcia in 2006.

Petitioner testified that Asis was one of her employees, and respondent conceded that petitioner is entitled to a deduction for $900 paid to Asis on behalf of BAO Home Care in 2009. However, the Form 1099-MISC issued to Asis in 2006 was from Betty Ong Real Estate. Asis did not testify at trial, and petitioner has not provided any information to describe the type of work Asis performed on behalf of her businesses. Therefore, although respondent has conceded that a working relationship existed between petitioner and Asis with respect to BAO Home Care in 2009, we have no reliable proof of such a relationship in 2006 with respect to Betty Ong Real Estate.

Similarly, petitioner has not provided any additional evidence that Ceron and Marasigan performed work for her during the years at issue or had any connection with her businesses. The memo lines in the checks payable to Ceron and Marasigan make vague references to dates and addresses, but absent any corroborative evidence do little to prove a working relationship. Neither Ceron nor Marasigan testified at trial, and petitioner did not provide a description of their work performed or proof that they included the amounts received from her in their income. This lack

of evidence is equally applicable to each of the other payees listed in petitioner's checks where she has not presented a Form 1099-MISC. Therefore, petitioner has failed to establish a business purpose for these expenses, and we sustain respondent's determinations with respect to all contract labor expenses, commissions and fees, and returns and allowances outside of the $23,890 paid to Garcia in 2006.

F.    Taxes and Licenses

Respondent has conceded deductions for taxes and licenses of $165 for 2007 and licenses of $737 for 2008 in connection with Betty Ong Real Estate. Without any further explanation, petitioner relies on checks to the department of motor vehicles, Fire Insurance Exchange, and American General Finance to substantiate her additional deductions for taxes and licenses. Petitioner has failed to explain the purpose of these expenses. Further, petitioner has failed to provide proof of a tax due or license acquired. We therefore sustain respondent's determinations with respect to taxes and licenses.

G.    Legal and Professional Fees

Petitioner claimed legal and professional fee deductions for amounts paid to her gardener, her cleaning lady, and repair workers on the Lassik house. As discussed above, petitioner has failed to satisfy the requirements of section 280A

with respect to all expenses in connection with the Lassik house. Petitioner has also presented several checks for what she claims to be legal work but has not presented any evidence of the type of legal or professional work conducted. We therefore sustain respondent's determinations with respect to legal and professional fees.

H.    Business Phones, Web Site, Education, and Dues and Membership Fees

Respondent allowed many of petitioner's claimed deductions for business phone expenses, Web site expenses, education expenses, and dues and membership fees. Petitioner has not presented any evidence outside of checks and her own self-serving testimony to establish a business purpose for her disallowed deductions. See Tokarski v. Commissioner, 87 T.C. at 77. We therefore sustain respondent's determination with respect to business phone expenses, Web site expenses, education expenses, and dues and membership fees.

I.    Business Promotions, Advertising, Supplies, Miscellaneous, Other Expenses, and Any Remaining Expenses

Petitioner relies on a voluminous collection of books and records to substantiate many additional disallowed expense deductions. These books and records establish the authenticity of most of petitioner's expenses. However, they do little to connect petitioner's expenses with a business purpose. As a result, the

Court has little evidence upon which to distinguish between petitioner's legitimate and illegitimate deductions.

Further, petitioner's books and records list many expenses that are clearly personal. For instance, among other personal expenses too numerous to list, petitioner claimed the following expense deductions with respect to Betty Ong Real Estate and BAO Home Care: (1) $20 for a "6 week make over"; (2) $54 and $148 for fashion jewelry; (3) $55 and $99 for health club memberships; (4) $200 to her son supported by a check with the note "happy birthday"; and (5) $200 to the "Martinez Family" as an offer of condolences. Petitioner's attempt to deduct these clearly personal expenses makes it difficult for the Court to give credibility to any deduction where she has not established a clear business purpose.

Nonetheless, respondent does not dispute that Betty Ong Real Estate and BAO Home Care were legitimate businesses during the years at issue. Consequently, we have no doubt that some of petitioner's remaining disallowed deductions are legitimate. Petitioner's credit card bills include notations next to each item identifying expenses such as "supplies" or "business promotions". Petitioner is likely to have incurred these types of expenses for her businesses during the years at issue and testified that these notations indicate legitimate business expenses. Accordingly, given petitioner's burden, the lack of evidence in

the record to support the business purpose of her remaining claimed deductions, and her lack of credibility, we believe we are being generous in allowing 10% of her remaining disallowed deductions under the Cohan rule. Any inexactitude in the estimate by the Court is of petitioner's own making and due to her failure to maintain proper business records. See Cohan v. Commissioner, 39 F.2d at 543-544.

III.    Long-Term Health Care Insurance

Section 213(a) carves out an exception to section 262, allowing for a deduction for personal medical care expenses to the extent that such expenses exceed 7.5% of the taxpayer's adjusted gross income. "Medical care" includes premiums paid for any qualified long-term care insurance contract as defined in section 7702B(b). Sec. 213(d)(1)(D). Section 7702B(b)(1) provides that a "qualified long-term care insurance contract" means any insurance contract if:

> (A) the only insurance protection provided under such contract is coverage of qualified long-term care services,

> (B) such contract does not pay or reimburse expenses incurred for services or items to the extent that such expenses are reimbursable under title XVIII of the Social Security Act or would be so reimbursable but for the application of a deductible or coinsurance amount,

> (C) such contract is guaranteed renewable,

- 23 -

(D) such contract does not provide for a cash surrender value or other money that can be--

(i) paid, assigned, or pledged as collateral for a loan, or

(ii) borrowed,

other than as provided in subparagraph (E) or paragraph (2)(C),

(E) all refunds of premiums, and all policyholder dividends or similar amounts, under such contract are to be applied as a reduction in future premiums or to increase future benefits, and

(F) such contract meets the requirements of subsection (g).

Petitioner paid $3,660 to Genworth Financial for long-term care insurance in 2009. Petitioner has not provided a copy of any related insurance policy or any other information regarding the coverage provided or terms of the agreement. Without such information, we have no way to determine whether petitioner's long-term care insurance satisfies the requirements of section 7702B(b). Accordingly, petitioner has not met her burden, and we sustain respondent's determinations with respect to petitioner's long-term health care insurance.

IV. Penalties

Respondent bears the burden of production with respect to the accuracy-related penalty and must therefore produce sufficient evidence that it is appropriate to impose that penalty. See sec. 7491(c); see also Higbee v.

Commissioner, 116 T.C. 438, 446 (2001). Section 6662(a) and (b)(2) imposes an accuracy-related penalty upon any underpayment of tax resulting from a substantial understatement of income tax. The penalty is equal to 20% of the portion of any underpayment attributable to a substantial understatement of income tax. Id. The term "substantial understatement" is defined as an understatement exceeding the greater of: (1) 10% of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A). Section 6662(a) and (b)(1) also imposes a penalty equal to 20% of the amount of an underpayment attributable to negligence or disregard of rules or regulations. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to maintain adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioner's failure to produce records substantiating her Schedule C expenses and her long-term health care costs supports the imposition of the accuracy-related penalty for negligence for the years at issue. The applicability of section 6662(b)(2) will depend on the magnitude of the understatement of income tax as calculated under Rule 155. If petitioner's understatement of income tax for each year at issue, as calculated under Rule 155, exceeds the greater of $5,000 or 10% of the tax

required to be shown on her return, respondent will have met his burden of production under section 7491(c). If not, respondent will have failed to meet his burden of production under section 7491(c) with respect to the section 6662 penalty for a substantial understatement.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment of tax if the taxpayer can establish that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances indicating that a taxpayer acted with reasonable cause and in good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Reliance on the advice of a tax professional may establish reasonable cause and good faith. See United States v. Boyle, 469 U.S. 241, 250 (1985). A taxpayer claiming reliance on professional advice must show that: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.

Neonatology Assocs. P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner was a knowledgeable taxpayer. She was a member of CTEC throughout the years at issue, and worked for H&R Block as a tax return preparer sometime between 2003 and 2005. Petitioner filed her own Federal tax returns for 2006-08. Despite her knowledge and training, petitioner claimed deductions for many clearly personal expenses. This conduct shows a lack of reasonable cause and good faith. For 2009 HRB prepared petitioner's Federal tax return. Petitioner argues that she provided HRB with all the necessary information to prepare her 2009 Federal tax return and relied on HRB to prepare an accurate return. Petitioner has failed to establish the accuracy of the information she provided to HRB and, therefore, has failed to establish reasonable cause and good faith for 2009.

Accordingly, pending a final calculation of petitioner's understatement of income tax under Rule 155, we find her liable for the section 6662 penalty for the years at issue as commensurate with respondent's concessions and our holdings.

The Court, in reaching its holdings, has considered all arguments made, and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.